UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHERYL THORNTON,<br><br>Plaintiff,<br><br>v.<br><br>CITY & COUNTY OF SAN FRANCISCO,<br><br>Defendant. | Case No. 21-cv-02938-SI<br><br>**ORDER GRANTING IN PART DEFENDANT'S MOTION TO DISMISS AND/OR STRIKE**<br><br>Re: Dkt. No. 21 |

Before the Court is a Motion for Judgment on the Pleadings and /or Motion to Strike filed by defendant City and County of San Francisco ("CCSF") against plaintiff Cheryl Thornton pursuant to Rules 12(c) and 12(f) of the Federal Rule of Civil Procure. Dkt. No. 21. The matter is now fully briefed and ripe for resolution. Based on the papers submitted, the Court finds the matter appropriate for resolution without oral argument and hereby VACATES the hearing set for December 10, 2021 pursuant to Local Rule 7-1(b). The Court GRANTS IN PART defendant's motion.

## BACKGROUND

### I.   Prior Settlement and Present Suit

Cheryl Thornton's employment with CCSF began nearly thirty years ago when she was hired by the Department of Public Health ("DPH") as a temporary unit clerk. Dkt. No. 5 ¶ 19 (First Amended Complaint, filed May 14, 2021) ("FAC"). She worked her way up through the Department and now serves as a Hospital Eligibility Supervisor. *Id*. In 2018, Thornton sued CCSF in state court for violations of California's Labor Code, California's Fair Employment and Housing Act, and unlawful employment practices under 42 U.S.C § 2000e–3. Dkt. No. 22-1, Ex. A (State

Court Comp.). CCSF removed the case to federal court and the parties later settled. *Denson-Thornton v. City and County of San Francisco*, 18-cv-07291-DMR, Dkt. No. 32 (N.D. Cal Jan. 9, 2018). See Dkt. No. 22-3, Ex. 3 (Settlement Agreement).

The Settlement Agreement, signed on February 24, 2020, provides that Thornton would release, in exchange for the settlement amount, "any and all liabilities, claims, demands, contracts, debts, damages, acts or omissions…" that "do or may exist, in any way arising out of, connected with or related to Plaintiff's employment" with CCSF "up to and including the date that Plaintiff signs this Agreement." Dkt. No. 22-3, Ex. 3 ¶ 2a. The "Released claims include, but are not limited to, any matter, cause or thing in any way arising out of, connected with, or related to the" action being settled. *Id*. The agreement also provided Thornton would not be prevented from "initiating or participating in proceedings about matters other that the Released Claims." *Id*. ¶ 2b. Further, the agreement states it would "not become effective or enforceable until the [seven-day] revocation period has expired." *Id*. ¶ 15[1]

In 2021, Thornton again sued CCSF, this time in an eleven-claim federal-court complaint alleging, among other things, retaliation and racial and age-based discrimination and harassment. Dkt. No. 5 (FAC). On October 20, 2021, CCSF filed a Motion for Judgment on the Pleadings and /or Motion to Strike paragraphs 20 through 30 and paragraph 33 of the FAC. Dkt. No. 21 (Motion). In CCSF's view, the release in the settlement agreement bars Thornton from including potential claims or allegations that could have accrued through March 3, 2020.

## II.     FAC's Pre-Settlement Factual Allegations

Thornton's FAC includes extensive factual content, including events and incidents that occurred prior to March 3, 2020. The FAC states in February 2019, Thornton interviewed for and was denied a promotion to Practicing Manager position at Potrero Hill Health Center, "which would

---

[1] Plaintiff's Opposition Brief refers to February 24, 2020 as the "operative date of the settlement." Dkt. No. 26 at 7. Defendant initially refers to March 3, 2020 as the effective date, Dkt. No. 21 at 6, and later observes that plaintiff "admits" "the Agreement provide[s] a complete legal release through at least February 24, 2020." Dkt. No. 27 at 2. Based on the plain text of the Agreement, Dkt. No. 22-3, Ex. 3 ¶ 15, the Court concludes March 3, 2020 is the operative date.

have entitled her to higher pay, additional training," more leadership opportunities, and telecommuting privileges. Dkt. No. 5, FAC ¶ 21. Thornton attempted to challenge the denial to no avail—ultimately, the "person who got the job [was] an outside hire, male, and non Black" thirty-year old. *Id*. ¶¶ 22, 25. That summer, Thornton participated in a protest rally to shed light on CCSF's allegedly unequal treatment of Black employees. *Id.* ¶ 24. In fall 2019, the FAC alleges Thornton was once again passed over for a promotional opportunity, "in favor of a younger male, Robert Pineda, who is also not Black…[and] does not have a BA in Industrial organizational psychology degree and plaintiff Thornton does." Pineda would then serve as Thornton's direct supervisor. *Id.* ¶ 28.

Later that fall in 2019, Thornton alleges Pineda denied her request to participate in leadership training, and CCSF assigned her a disfavored role as a "floater" in various clinics, which denied her "stability in her work, the opportunity for training, and the opportunity to manage and supervise employees at a single clinic." *Id*. ¶¶ 29, 30. "Up to this day," the FAC alleges, Thornton has been assigned "lesser duties" than her colleagues. *Id*. ¶ 30. The FAC then describes an incident in February 2020 (the start of COVID's global surge) when Thornton was reprimanded for wearing a mask at work. *Id*. ¶ 33.

### III. FAC's Post-Settlement Factual Allegations

The FAC then describes various events and incidents occurring after March 3, 2020—the operative date of the settlement agreement. As lockdowns began to spread around the United States in mid-March and April, the FAC alleges that Thornton was asked to screen patients from inside a lobby but was later asked to move outside for screening. *Id*. ¶ 32. Only Black employees, according to the FAC, were told to screen patients outside and were not provided adequate masks to wear when screening. *Id*. ¶ 35. This led to Thornton filing a complaint with CAL-OSHA, *id*. ¶ 37, and the City of San Francisco's Human Resources Director. *Id*. ¶ 38. Due to complaining to CAL-OSHA, Thornton alleges she was transferred to a new clinic in San Francisco's Tenderloin neighborhood, depriving her of potential overtime and supervisory experience and subjecting her to the "humiliation of being transferred against her will." *Id*. ¶ 42.

1    According to the FAC, the indignities continued through spring and summer of 2020. The
2  Tenderloin clinic had plumbing problems, eventually resulting in a sewage flood. *Id*. ¶¶ 45, 50.
3  Pineda reprimanded Thornton for various infractions, such as failing to respond to an email or failing
4  to turn in timesheets—actions Thornton interpreted as retaliation for the CAL-OSHA complaint. *Id*.
5  ¶¶ 43, 46. She was then denied a "fair performance appraisal," *id*. ¶ 48, and was told that her clinical
6  unit would have received a score of 100% for completing tasks "if it has not been for Cheryl, because
7  [of the flooded clinic]." *Id*. ¶¶ 51. As of May 2021, when Thornton filed her FAC, she was still an
8  employee at the Tenderloin clinic and had not been granted overtime and supervisory roles. *Id*. ¶¶
9  39, 52-53.

**LEGAL STANDARD**

A motion for judgment on the pleadings under Rule 12(c) "is properly granted when, taking all allegations in the pleading as true, the moving party is entitled to judgement as a matter of law." *Merchants Home Delivery Service, Inc. v. Frank B. Hall & Co., Inc*., 50 F.3d 1486, 1488 (9th Cir. 1995) (internal citations omitted). The 12(c) motion is "functionally identical" to a 12(b) motion to dismiss, the principal difference [being] the time of the filing. *Dworkin v. Hustler Magazine Inc.*, 867 F.2d 1188, 1192 (9th Cir. 1989). Accordingly, a court considering a 12(c) motion must accept as true all material facts and draw all reasonable inferences in favor of the non-movant. *Fleming v. Pickard*, 581 F.3d 922, 925 (9th Cir. 2009).

Federal Rule of Civil Procedure 12(f) provides that a court may strike "any redundant, immaterial, impertinent, or scandalous matter" from a pleading in response to a motion or on its own. "Motions to strike are generally not granted unless it is clear that the matter to be stricken could have no possible bearing on the subject matter of the litigation." *LeDuc v. Kentucky Cent. Life Ins. Co.*, 814 F. Supp. 820, 830 (N.D. Cal. 1992); *Fantasy, Inc. v. Fogerty*, 984 F.2d 1524, 1527 (9th Cir. 1993), rev'd on other grounds, 510 U.S. 517 (1994) (defining immaterial matter as "that which has no essential or important relationship to the claim for relief"). Allegations that supply "background or historical material or other matter of an evidentiary nature will not be stricken unless unduly prejudicial to defendant." *LeDuc*, 814 F. Supp. at 830. Importantly, a motion to strike must

4

be made "before responding to the pleading or, if a response is not allowed, within 21 days after being served with the pleading." Fed. R. Civ. P. 12(f).

Settlement releases may provide a basis for striking allegations based on released claims. See *Brown v. United States*, 271 F. Supp. 2d 225, 228 (D.D.C. 2003). However, the scope of a release is not absolute: "[a]bsent an express contrary term in the agreement, [an employer-defendant does not buy] the right to have its continuing relations with [a plaintiff-employee] analyzed in an ahistorical vacuum." *Douglass v. Nat'l Fed'n of Indep. Bus.*, 1995 WL 579640 at *2 (9th Cir. 1995). Accordingly, legal claims are properly included in a post-settlement complaint as long as the released allegations do not form the sole basis for relief. See *id.* ("All rights to sue for certain acts might well be barred without concomitantly barring testimony about those acts for the purpose of demonstrating that discriminatory activity was continuing.").

## DISCUSSION

CCSF argues paragraphs 20 through 30 and paragraph 33 of the FAC—which reference events prior to March 3, 2020—should be stricken because Thornton "executed a voluntary and complete general legal release of all known or unknown claims that could relate in any way to her employment with the City." Dkt. No. 21 at 8 (Motion). Thornton responds that "[a]t issue in this case are acts of discrimination occurring after the date of the settlement agreement became effective." Dkt. No. 26 (Opposition).

As a preliminary matter, the Court notes the 12(f) motion was not timely filed. CCSF filed its answer to the FAC on June 3, 2021, Dkt. No. 9, and its 12(f) motion on October 20, 2021. Dkt. No. 21. A timely motion to strike must be submitted "either before responding to the pleading or, if a response is not allowed, within 21 days after being served with the pleading." Fed. R. Civ. P. 12(f)(2). Here, a response was "allowed," rendering the timing of the motion improper. However, the Court may nonetheless grant a motion to strike "on its own," rendering the default immaterial. Fed. R. Civ. P. 12(f)(1).

Defendant CCSF presents an expansive interpretation of the settlement release provision. The Court adopts a more limited reading: the release only applies to legal claims that find their

factual foundations in pre-settlement events or incidents. The Court identifies three such claims included throughout Thornton's complaint: "a. Denial of necessary training; b. Denial of training opportunities; c. Denial of promotions." FAC ¶ 58. The FAC includes these three claims within the First Claim for "Racial Discrimination – Disparate Impact." *Id*. The FAC also includes these three factual claims again in the Fifth Claim for "Employment Discrimination," *id.* ¶ 96, as well as the Sixth Claim for "Age Discrimination." *Id*. ¶ 106 (a. Denial of training opportunities necessary to advance; b. Denial of Promotion in favor of younger, less qualified employees"). The FAC also includes "Denial of training" under the Fourth Claim for "Racial Discrimination – Retaliation," *id.* ¶ 86, and the Tenth Claim for Retaliation under FEHA. *Id*. ¶ 145n.

To the extent the FAC predicates its claims for relief on the denial of training and the denial of promotions, such claims are barred by the settlement agreement. The sole factual bases for the denial of training and promotions are all located in 2019. *See* FAC ¶¶ 21, 22, 24, 25, 28, 29, 30. While the FAC's allegation that the assignment of "lesser duties" is "happening to this day" might support a claim for continuing discrimination based on such assigned duties, *id*. ¶ 30, there is no conceivable basis for concluding that the denial of training and promotion is part of an ongoing or "continuing" pattern. See *Douglass,* 1995 WL 579640 at *2 ("While it is true that the pre-agreement evidence could not be used as a basis for the underlying action, the evidence could be admitted to show, as Douglass claimed, a pattern of discrimination by NFIB against him and a reason for NFIB to retaliate against him."). Importantly, the Court's present Order does not strike or dismiss the FAC's First, Fourth, Sixth, or Tenth Claims *in whole*; rather, the Court will grant judgment on the pleadings on the components of claims One, Four, Six, and Ten that rely solely on the pre-settlement denials of training and promotion as their factual basis.

However, the Court declines to strike paragraphs 20 through 30 and paragraph 33, which contain the factual allegations themselves. An order to strike is generally improper unless the challenged paragraphs "have no possible bearing on the subject matter of the litigation" or will unduly prejudice the defendant. *LeDuc*, 814 F. Supp. at 830. As long as Thornton uses the factual allegations in paragraphs 20 through 30 and paragraph 33 to support actionable claims, the factual allegations could conceivably serve as "background or historical material or other matter of an

evidentiary nature" as to render their inclusion appropriate. *Id.*; See also, *Douglass,* 1995 WL 579640 at *2 ("Evidence of discrimination occurring outside an actionable time period may constitute relevant background evidence in determining present discriminatory action."). Because CCSF has neither demonstrated undue prejudice nor the lack of a conceivable evidentiary basis for paragraphs 20 through 30 and paragraph 33, the Court denies the order to strike. This Order is without prejudice to CCSF's ability to challenge or limit the inclusion of the factual allegations in paragraphs 20 through 30 and paragraph 33 as evidence in future proceedings.

## CONCLUSION

For the foregoing reasons, the Court will GRANT IN PART defendant CCSF's Motion for Judgment on the Pleadings and /or Motion to Strike.

**IT IS SO ORDERED**.

Dated: December 6, 2021

SUSAN ILLSTON
United States District Judge